Benjamin R. Trachtman, Esq. [SBN 137458]
btrachtman@trachtmanlaw.com
Mitchell C. Motu, Esq. [SBN 316474]
mmotu@trachtmanlaw.com
TRACHTMAN & TRACHTMAN, LLP
19732 MacArthur Blvd, Ste 100
Irvine, CA 92612
Telephone:  (949) 282-0100
Facsimile:  (949) 282-0111

Attorneys for Plaintiff FIRST TRANSIT, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| FIRST TRANSIT, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES, a municipal corporation; LOS ANGELES DEPARTMENT OF TRANSPORTATION, a municipal agency; ERIC GARCETTI; and DOES 1 through 100, Inclusive,<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT BY FIRST TRANSIT, INC. FOR DAMAGES BASED UPON:**<br><br>**(1) BREACH OF AGREEMENT;**<br><br>**(2) CONVERSION;**<br><br>**(3) BREACH OF AGREEMENT; AND**<br><br>**(4) CONVERSION**<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff First Transit, Inc. alleges as follows:

## GENERAL ALLEGATIONS

1. Plaintiff First Transit, Inc. (hereinafter referred to as either "First Transit" or "Plaintiff") is, and at all times relevant to this action was, a Delaware corporation, with its principal place of business in the State of Ohio and

authorized and engaged in the business of private and public transportation systems.  First Transit is, and was at all relevant times, qualified to do business in the State of California to perform as described in this Complaint.

2.     First Transit is informed and believes, and based thereon alleges, that the Defendant City of Los Angeles (hereinafter "COLA") was, and now is, a municipal corporation doing business in the State of California, with its principal place of business in Los Angeles, California.

3.     First Transit is informed and believes, and based thereon alleges, that Defendant Los Angeles Department of Transportation (hereinafter "LADOT") was, and now is, a municipal agency of the Defendant City of Los Angeles doing business in the State of California, with its principal place of business in Los Angeles, California.  First Transit is informed and believes and thereon alleges that at all relevant times, LADOT was engaged in the business of providing public transportation and was formed by city ordinance in 1979 to perform as described in this Complaint.

4.     First Transit is informed and believes, and based thereon alleges, that Defendant Eric Garcetti ("Mayor Garcetti") was, and now is, the duly elected Mayor of Defendant City of Los Angeles since 2013, who is responsible for appointing a general manager to operate the Defendant City of Los Angeles Department of Transportation.

5.     First Transit is unaware of the true names, capacities, or basis for liability of Defendants DOES 1 through 100, inclusive, and therefore sues said Defendants by their fictitious names.  First Transit will amend this Complaint to allege their true names, capacities, or basis for liability when the same has been ascertained.  First Transit is informed and believes, and thereon alleges, that Defendants DOES 1 through 100, inclusive, and each of them, are in some manner liable to First Transit, or claim some right, title or interest in the subject property that is junior and inferior to that of First Transit, or both.

_____

COMPLAINT BY FIRST TRANSIT, INC.

6.      At all times relevant to this action, each Defendant, including those fictitiously named, was the joint venturer, agent, servant, employee, partner, or surety of the other Defendants and was acting within the scope of said venture, agency, employment, partnership, or surety, with the knowledge and consent of ratification of each of the other Defendants in doing the things alleged herein.

7.      This action is commercial in nature and thus is not subject to California Civil Code §§ 1812.10 and 2984.4.

8.      First Transit has complied with the requirements of the California Government Claims Act ("CGCA") in accordance with California Gov't. Code, §§ 900 *et seq.* First Transit presented a timely governmental claim with Defendant City of Los Angeles on January 31, 2020.  Defendant City of Los Angeles never responded to First Transit's claim.  The statutory basis of the claims against the Defendants include, but is not limited to, California Gov't. Code §§ 814 and 815.3.

## JURISDICTION AND VENUE

9.      Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332, because First Transit was and is a corporation existing under the laws of the State of Delaware, COLA is a municipal corporation existing under the laws of the State of California, LADOT is a municipal agency existing under the laws of the State of California, and, Mayor Garcetti is an elected official for COLA and resides in the State of California.  The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

10.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that First Transit is informed and believes, and on the basis of that information and belief alleges, among other things, that the obligations herein sued upon arose, occurred, happened, and were and now are due, owing and payable from Defendants, and each of them, to First Transit in the above-entitled judicial district in the County of Los Angeles, State of California because the performance

COMPLAINT BY FIRST TRANSIT, INC.

1   of the underlying Agreement and otherwise unlawful and/or intentionally tortious
2   conduct occurred in the County of Los Angeles, State of California.

3   **FIRST CAUSE OF ACTION**

4   **(Breach of Agreement Against Defendants COLA through LADOT**
5   **and DOES 1-100)**

6   　　11.　　First Transit realleges and incorporates by reference, Paragraphs 1
7   through 10, inclusive, of this Complaint as if repeated here verbatim.

8   　　12.　　In April 2017, LADOT issued a Request for Proposals ("RFP") to
9   select a contractor for the operation of and proposed upgrades to LADOT's
10  Downtown Dash and Dash Mid-City public transit services.

11  　　13.　　On May 5, 2017, LADOT issued Addendum 2 to the RFP to provide
12  modifications, additions and/or clarifications to the April 2017 RFP.  In relevant
13  part, a clarification was issued with regard to installation requirements for the
14  Mobileye Shield Plus system (hereafter "System"), explaining that the System
15  comes pre-installed on all new LADOT vehicles, but the contractor was
16  responsible for the purchase and installation of the System on all existing fleet
17  vehicles (109 vehicles total) with the exception of the six (6) leased Recreation
18  and Park Services vehicles and LADOT's three (3) trolley contingency fleet.
19  (Attached hereto and incorporated by reference hereat as **Exhibit "A"** is a true
20  and correct copy of Addendum 2 to the RFP).

21  　　14.　　The Mobileye Shield Plus system is a removable advanced collision
22  avoidance system, the purchase and installation of which is the subject of this
23  action.

24  　　15.　　As part of the competitive bidding process for the RFP, First Transit
25  submitted the required Cost Components Form C-11-2A, which identified the key
26  cost components for the operation of the contemplated services and upgrades.
27  (Attached hereto and incorporated by reference hereat as **Exhibit "B"** is a true
28  and correct copy of First Transit's Cost Components Form C-11-2A).

_____

16.     Line 10.a. of First Transit's Cost Components Form C-11-2A listed $122,590.00 as the total 4-year cost for the purchase and installation of the <u>standard</u> Mobileye system, as opposed to the <u>Mobileye Shield Plus system</u>.

17.     Two other contractor bidders – Transdev and MV – listed the total 4-year cost for the purchase and installation of the removable <u>Mobileye Shield Plus system</u> as $1,097,179.00 on their Cost Components Form C-11-2A. (Attached hereto and incorporated by reference hereat as **Exhibit "C"** is a true and correct copy of Transdev's, and attached hereto and incorporated by reference hereat as **Exhibit "D"** is a true and correct copy of MV's Cost Components Form C-11-2A).

18.     On July 6, 2017, First Transit participated in an interview with LADOT for the operation of the contemplated services. During the interview, LADOT requested a clarification of whether First Transit proposed and priced the removable Mobileye Shield Plus system because LADOT noticed a discrepancy in the pricing amount of about $800,000 between the Mobileye Shield Plus system and the standard Mobileye system without the "Plus" features.

19.     In a letter dated July 11, 2017, First Transit's Director of Business Development, David A. Smith, clarified that due to an error, the $122,590.00 included in the First Transit Cost Components Form C-11-2A (**Exhibit "B"**) reflected the price of the standard Mobileye system, whereas the Mobileye Shield Plus system would cost an additional $893,780.00 for First Transit to purchase and install. Mr. Smith further clarified that First Transit was prepared to provide the <u>standard</u> Mobileye system priced in the bid, but if LADOT wanted the Mobileye Shield Plus system, the pricing would need to be adjusted to reflect a total 4-year cost of $1,016,370.00 as follows:

///

///

///

_____
COMPLAINT BY FIRST TRANSIT, INC.

|                        | Year 1    | Year 2    | Opt Yr 1 | Opt Y2   |
|------------------------|-----------|-----------|----------|----------|
| Form C-11-2A, Line 10a | $785,450  | $153,640  | $38,640  | $38,640  |

(Attached hereto and incorporated by reference as **Exhibit "E"** is a true and correct copy of David A. Smith's letter to LADOT dated July 11, 2017 explaining the variance in system prices). The intent of First Transit was to provide the required Mobileye Shield Plus system rather than the standard Mobileye system only if First Transit's bid proposal was revised to reflect the $893,780.00 price variance and increase between the two system models.

20.     As such, LADOT knew or should have known that after Mr. Smith clarified the pricing between the two Mobileye systems, wherein a new 4-year total cost was bid for the purchase and installation of the Mobileye Shield Plus system, First Transit did not intend to provide the more robust Mobileye Shield Plus system at the same bid price as the standard Mobileye system.

21.     In a letter dated August 9, 2017, LADOT responded to Mr. Smith's letter dated July 11, 2017, noting that the RFP required the more robust Mobileye Shield Plus system, and requested that First Transit confirm that it would provide the Mobileye Shield Plus system at no additional cost than that stated in line 10.a. of the Cost Components Form C-11-2A of its proposal, if First Transit was awarded the contract. (Attached hereto and incorporated by reference as **Exhibit "F"** is a true and correct copy of LADOT's letter to Mr. Smith dated August 9, 2017).

22.     In a letter dated August 10, 2017, Mr. Smith responded to LADOT's letter dated August 9, 2017, and confirmed that First Transit would provide the Mobileye Shield Plus system at no additional cost above what is stated in line item 10.a. on its submitted Cost Components Form C-11-2A. (Attached hereto and incorporated by reference as **Exhibit "G"** is a true and correct copy of Mr. Smith's letter to LADOT dated August 10, 2017).

23.     On November 6, 2017, COLA and First Transit entered into a written agreement entitled the "Agreement Between the City of Los Angeles and First Transit, Inc. for the Operations of the City of Los Angeles, Department of Transportation's (LADOT) Bus Transit Operations for the Dash Downtown and Dash Mid-City Bus Transit Services" (the "Agreement").  (Attached hereto and incorporated by reference hereat as **Exhibit "H"** is a true and correct copy of the Agreement).

24.     The Agreement was to be in effect for two (2) years starting on October 29, 2017, and could be extended by LADOT for two (2) one (1) year periods.  (See **Exhibit "H"** at Section II.A.1. at page 5 of 12.)  The RFP was incorporated into the Agreement.  (See **Exhibit "H"** at page 2 of 12.)

25.     First Transit furnished and provided all of the necessary labor and equipment, including in relevant part, purchasing and installing the more expensive, removable Mobileye Shield Plus system. Per Mr. Smith's letter to LADOT dated July 11, 2017 (see **Exhibit "E"**), the use of the Mobileye Shield Plus system rather than the standard Mobileye system included in the proposal increased the total System price to $1,016,370.00. Ultimately, First Transit purchased and installed the System for $941,697.16, which represents the reasonable value of the System provided by First Transit under the Agreement.

26.     Section 10.1.1 of the RFP states that upon completion of the contract term, the Contractor (First Transit) shall return all vehicles to LADOT "in the condition which they were received (with the exception of normal wear and tear) …."  The existing fleet of vehicles received by First Transit at the outset of the Agreement in 2017 were not equipped with any version of the Mobileye system. (Attached hereto and incorporated by reference as **Exhibit "I"** is a true and correct copy of Section 10.1.1 excerpted from the RFP).

27.     Section 5.5.4.2 of the RFP contemplates ownership of items of personal property after the end of the contract period, and sets forth that the

_____

COMPLAINT BY FIRST TRANSIT, INC.

Contractor (First Transit) would provide iPhones and mobile hotspots, and upon the end of the contract period, such iPhones and mobile hotspots would become the property of LADOT. No such clause exists with regard to the System becoming the property of LADOT upon the end of the contract period.  (Attached hereto and incorporated by reference as **Exhibit "J"** is a true and correct copy of Section 5.5.4.2 excerpted from the RFP).

28.     Section 12.13.1 of the RFP states that all real property, equipment, and vehicles purchased with capital and/or start-up funds provided under the Agreement shall become the property of LADOT and shall be returned to LADOT upon termination of the Agreement, except where provided otherwise. (Attached hereto and incorporated by reference as **Exhibit "K"** is a true and correct copy of Section 12.13.1 excerpted from the RFP).

29.     First Transit purchased and installed the System on the existing fleet of LADOT vehicles for $941,697.16.  The $122,590.00 arguably paid by LADOT for the System was for use, not ownership, of the System for the two (2) years that the Agreement was in effect between First Transit and LADOT.  Even under LADOT's version of the Agreement and incorporated RFP, only $122,590.00 worth of the System became the property of LADOT at the end of the two (2) year period of the Agreement.

30.     Before expiration of the contractual term, in a letter to LADOT dated September 18, 2019, First Transit's Regional Vice President of the Southwest, Jay Jeter, asserted that First Transit had the right to possess the System after the end of the contract period. Mr. Jeter offered to sell the System to LADOT for $819,107.16 (the $941,697.16 purchase price less the $122,590.00 paid by LADOT under the Agreement for use of the removable System), or, if LADOT did not want to buy the System, demanded that a schedule be coordinated wherein First Transit could retrieve the System from each vehicle in which First Transit installed the System at the beginning of the Agreement. (Attached hereto and

incorporated by reference hereat as **Exhibit "L"** is a true and correct copy of Mr. Jeter's letter to LADOT dated September 18, 2019). LADOT did not respond to this letter.

31. In an email to LADOT dated October 3, 2019, Mr. Jeter informed LADOT that First Transit planned to remove the System from the vehicles on October 9, 2019. (Attached hereto as **Exhibit "M"** is a true and correct copy of Mr. Jeter's email to LADOT dated October 3, 2019).

32. In an email to First Transit dated October 3, 2019, LADOT stated that "under no circumstances" would First Transit be allowed to remove the System from each vehicle. (Attached hereto and incorporated by reference hereat as **Exhibit "N"** is a true and correct copy of LADOT's email to Mr. Jeter dated October 3, 2019).

33. In a letter to LADOT dated October 11, 2019, Mr. Jeter appealed LADOT's refusal to turn over possession of the System, reiterated First Transit's position that it owned the System, and again offered to sell the System to LADOT for $819,107.16. (Attached hereto and incorporated by reference hereat as **Exhibit "O"** is a true and correct copy of Mr. Jeter's letter to LADOT dated October 11, 2019).

34. The current reasonable value of the System provided by First Transit under the Agreement amounts to $941,697.16, exclusive of interest expense. To date, Defendants COLA through LADOT, and DOES 1 through 50, arguably paid First Transit $122,590.00 for only two (2) years of use of the System. The reasonable and current market value of said unpaid equipment and services after expiration of the term of the Agreement furnished by First Transit to LADOT is $819,107.16.

35. Accordingly, reading the Agreement and incorporated RFP, Defendants either (1) must reimburse First Transit the sum of $819,107.16 for the aforementioned purchase and installation of the removable System by First Transit

_____
COMPLAINT BY FIRST TRANSIT, INC.

for LADOT and retention of the System by LADOT after expiration of the two (2) year term of the Agreement, or (2) must return the removable System to First Transit since LADOT has not paid for use of the System beyond the completed two (2) year term of the Agreement between COLA and First Transit.

36.     First Transit has performed all covenants, conditions and promises of the Agreement, except those obligations First Transit was prevented or excused from performing.

37.     Defendants COLA through LADOT, and DOES 1 through 50, and each of them, breached the Agreement by (1) failing and refusing to pay in full for the purchase and installation of the System by First Transit as payment became due following execution of the Agreement, or (2) failing and refusing to return the removable System to First Transit following completion of the term of the Agreement between COLA and First Transit.

38.     As a direct and proximate result of the breach of the Agreement by Defendants COLA through LADOT, and DOES 1 through 50, and each of them, First Transit has suffered damages in the sum of not less than $819,107.16, with interest at the legal rate of ten percent (10%) per annum under California law.  No portion of said sum has been paid, although demand for payment of the balance has been made.

39.     By the failure of Defendants COLA through LADOT, and DOES 1 through 50, and each of them, to pay or return the equipment comprising the removable System, LADOT has been unjustly enriched. LADOT has also received the benefit and value of the work performed by First Transit without LADOT fully performing its own obligations.

## SECOND CAUSE OF ACTION

**(Conversion Against Defendants COLA through LADOT and DOES 1-100)**

40.     First Transit realleges Paragraphs 1 through 39 as though fully set forth herein.

_____

41. First Transit is informed and believes, and on the basis of that information and belief alleges, that the Defendants, and each of them, at the end of the contract period, converted the System purchased and installed by First Transit.

42. First Transit is informed and believes, and on the basis of that information and belief alleges, that First Transit had an immediate right to possess the Mobileye Shield Plus system at the end of the two (2) year contract period.

43. First Transit is informed and believes, and on the basis of that information and belief alleges, that Defendants, and each of them, intentionally and substantially interfered with First Transit's ownership of the System by refusing to return the System to First Transit after First Transit's demand of same.

44. First Transit is informed and believes, and on the basis of that information and belief alleges, that First Transit asserted ownership over the System in multiple communications with LADOT and thus did not consent to LADOT's interference with the System (See **Exhibits "L," "M,"** and **"O"**).

45. First Transit is informed and believes, and on the basis of that information and belief alleges, that it was harmed in the amount of no less than $819,107.16, with interest at the legal rate of ten percent (10%) per annum under California law.

46. First Transit is informed and believes, and on the basis of that information and belief alleges, that the conduct of the Defendants, and each of them, was a substantial factor in causing harm to First Transit.

## THIRD CAUSE OF ACTION

### (Breach of Agreement Against Defendants COLA through LADOT and DOES 1-100)

47. First Transit realleges and incorporates by reference Paragraphs 1 through 46, inclusive, of this Complaint as if repeated here verbatim.

_____
COMPLAINT BY FIRST TRANSIT, INC.

48.     Additionally, when First Transit took over the LADOT transit operations in 2017, First Transit purchased certain inventory and equipment from the predecessor contractor, namely Transdev, without the use of any capital or start-up funds under the Agreement.  The equipment purchased by First Transit directly from Transdev generally included the following: shop equipment, service lifts, floor scrubber, jack stands, 10-ton air jack, golf cart, forklift, safety cabinet, transmission jack, electric power MIG (for welding), and portable generator (hereafter "Transdev Equipment").

49.     The entire transaction between First Transit and Transdev for certain inventory and equipment was for $428,864.33.  The equipment itemized in Paragraph 50 above totaled approximately $212,661.86.  (Attached hereto and incorporated by reference hereat as **Exhibit "P"** is a true and correct copy of an invoice dated October 28, 2017 issued by Transdev directly to First Transit for the inventory and equipment detailed above.)

50.     Prior to the termination of the Agreement between First Transit and COLA, First Transit placed LADOT on notice that First Transit intended to keep and remove First Transit's personal property, specifically the equipment itemized in Paragraph 50 above, as that equipment was acquired by First Transit without the use of capital or start-up funds under the Agreement.  Further, First Transit was going to take the equipment at the conclusion of the relationship.  (See **Exhibit "K,"** Section 12.13.1 excerpted from the RFP.)

51.     In response to First Transit's notice regarding the equipment, LADOT threatened to institute criminal proceedings if First Transit removed First Transit's own personal property at the conclusion of the term of the Agreement.

52.     By acting in direct contravention of the terms of the Agreement, COLA through LADOT breached the Agreement be refusing to allow First Transit to remove First Transit's personal property—the Transdev Equipment— under threat of criminal prosecution.

_____

COMPLAINT BY FIRST TRANSIT, INC.

53.     As a direct and proximate result of the breach of the Agreement by Defendants COLA through LADOT, and DOES 1 through 50, and each of them, First Transit has suffered additional and separate damages in the sum of not less than $135,000, which is the current book value with accumulated depreciation of the Transdev Equipment, with interest at the legal rate of ten percent (10%) per annum under California law.  No portion of said sum has been paid, although demand for payment of the balance has been made.

54.     By the failure of Defendants COLA through LADOT, and DOES 1 through 50, and each of them, to pay or return to First Transit its Transdev Equipment itemized in Paragraph 50 above, LADOT has been unjustly enriched. LADOT has also received the benefit and value of the Transdev Equipment purchased by First Transit without LADOT fully performing its own obligations.

## FOURTH CAUSE OF ACTION

**(Conversion Against Defendants COLA through LADOT and DOES 1-100)**

55.     First Transit realleges Paragraphs 1 through 54 as though fully set forth herein.

56.     First Transit is informed and believes, and on the basis of that information and belief alleges, that the Defendants, and each of them, at the end of the contract period, converted the Transdev Equipment purchased by First Transit without capital or start-up funds under the Agreement.

57.     First Transit is informed and believes, and on the basis of that information and belief alleges, that First Transit had an immediate right to possess the Transdev Equipment at the end of the contract period.

58.     First Transit is informed and believes, and on the basis of that information and belief alleges, that Defendants, and each of them, intentionally and substantially interfered with First Transit's ownership of the Transdev Equipment by refusing to return the Transdev Equipment to First Transit after First Transit's demand of same.

_____
COMPLAINT BY FIRST TRANSIT, INC.

59.     First Transit is informed and believes, and on the basis of that information and belief alleges, that First Transit asserted ownership over the Transdev Equipment via communications with LADOT and thus did not consent to LADOT's interference with the Transdev Equipment at the conclusion of the Agreement.

60.     First Transit is informed and believes, and on the basis of that information and belief alleges, that it was harmed in the amount of no less than $135,000.00, with interest at the legal rate of ten percent (10%) per annum under California law.

## PRAYER FOR RELIEF

WHEREFORE, First Transit prays for judgment as follows:

### FIRST CAUSE OF ACTION

1.     For judgment against Defendants, and each of them, in an amount of not less than $819,107.16 in favor of First Transit;

2.     For interest thereon at the legal rate of ten percent (10%) per annum from the date of breach, according to proof, until paid;

3.     For attorney's fees if allowed under applicable law;

4.     For costs of suit herein incurred; and

5.     For such other and further relief as the Court deems just and proper.


### SECOND CAUSE OF ACTION

1.     For judgment against Defendants, and each of them, in an amount of not less than $819,107.16 in favor of First Transit;

2.     For interest thereon at the legal rate of ten percent (10%) per annum from the date of the conversion, according to proof, until paid;

3.     For attorney's fees if allowed under applicable law;

4.     For costs of suit herein incurred; and

5.     For such other and further relief as the Court deems just and proper.

COMPLAINT BY FIRST TRANSIT, INC.

**THIRD CAUSE OF ACTION**

1.     For judgment against Defendants, and each of them, in an amount of not less than $135,000.00 in favor of First Transit;

2.     For interest thereon at the legal rate of ten percent (10%) per annum from the date of the breach, according to proof, until paid;

3.     For attorney's fees if allowed under applicable law;

4.     For costs of suit herein incurred; and

5.     For such other and further relief as the Court deems just and proper.

**FOURTH CAUSE OF ACTION**

1.     For judgment against Defendants, and each of them, in an amount of not less than $135,000.00 in favor of First Transit;

2.     For interest thereon at the legal rate of ten percent (10%) per annum from the date of the conversion, according to proof, until paid;

3.     For attorney's fees if allowed under applicable law;

4.     For costs of suit herein incurred; and

5.     For such other and further relief as the Court deems just and proper.

///
///
///
///
///
///
///
///
///
///

-15-

1

## **DEMAND FOR JURY TRIAL**

2

Pursuant to Rule 201 of the Local Rules of the United States District Court

3

for the Central District of California (Fed. R. Civ. P. 38), First Transit hereby

4

demands a jury trial in this action.

5

6

DATED:  August 17,  2020          **TRACHTMAN & TRACHTMAN, LLP**

7

8

*/s/ Benjamin R. Trachtman*

By:_____

9

Benjamin R. Trachtman

Mitch C. Motu

10

19732 MacArthur Blvd., Suite 100

11

Irvine, CA  92612

12

Email: btrachtman@trachtmanlaw.com

Email: mmotu@trachtmanlaw.com

13

Telephone: (949) 282-0100

14

Facsimile:  (949) 282-0111

15

Attorneys for Plaintiff FIRST TRANSIT, INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

_____
COMPLAINT BY FIRST TRANSIT, INC.